IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL RICARDO DOMINGUEZ,<br><br>　　　　　　　　　Petitioner,<br><br>　　　vs.<br><br>RAYMOND MADDEN, Acting Warden, California State Prison, Centinela,[1]<br><br>　　　　　　　　　Respondent. | No. 2:13-cv-02114-JKS<br><br>MEMORANDUM DECISION |

　　　　Gabriel Ricardo Dominguez, a state prisoner proceeding *pro se*, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Dominguez is in the custody of

the California Department of Corrections and Rehabilitation and incarcerated at California State

Prison, Centinela.  Respondent has answered, and Dominguez has replied.

　　　　　　　　　　　　　I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　On February 5, 2010, Dominguez was charged with murder (count 1) and carrying a

concealed handgun (count 2) in connection with the 2009 killing of Samuel Sanchez.  The

information further alleged that Dominguez committed count 1 for the benefit of a criminal street

gang and that he was armed with a knife.  On direct appeal of his conviction, the California

Court of Appeal recounted the following factual and procedural background of Dominguez's

case:

> 　　　　Brian Logan, with his friends Nathaniel Renteria and victim Sanchez, went to a liquor store to rent a U–Haul truck.  Logan was wearing a red and black shirt and red and black shoes.  Sanchez wore a red jersey.  While they were in the store, [Dominguez's] brother Leonardo Chavez drove up with his girlfriend, Shanti Maharajh.  Chavez went

---

[1]　　　　Raymond Madden, Acting Warden, California State Prison, Centinela, is substituted for Greg Lewis, former Warden, Pelican Bay State Prison.  FED. R. CIV. P. 25(c).

inside the store and exchanged words with Renteria.<sup>FN1</sup>  They all went outside and began fighting.  Outnumbered three to one, Chavez told Maharajh to call his "homies."

> FN.  Renteria may have asked Chavez, "what's up, ene?"  "Ene" is Spanish for "N" and when said to a Sureño gang member would be taken as a challenge.

Maharajh was moving that day; her house was very near to the liquor store.  Chavez, his brothers Francisco Dominguez and [Dominguez], and various other family and friends were helping.  When Maharajh called the house for help, almost everyone immediately got in a Suburban and left to drive the very short distance to the store.  [Dominguez] was in the bathroom and did not go with them.  The Suburban pulled up to the fight and several people got out and joined the fight.  [Dominguez] followed on foot.

A group of young men were at the nearby Superb Burger and saw the fight from across the street.  According to one of the group, it looked like a gang fight between men wearing blue and three men wearing red.  As the fight continued, Sanchez was singled out by the larger group in blue.  By then, he was on the ground in the fetal position, where he was kicked, punched, and stomped.  Then everyone backed away from Sanchez and someone approached and inflicted the last wounds, stabbing Sanchez in the back of his head, neck, and shoulders.

Sanchez was bloody.  Logan and Renteria took him to the UC Davis Medical Center, where he died.  The cause of death was a total of 11 stab wounds to his neck and torso.  Some of the wounds were three-inches deep.

The main issue at trial was the identity of the stabber.  One of the men at Superb Burger, Michael Purcell, saw someone walk up and join the fight.  That person had yelled at Purcell, who walked away.<sup>FN2</sup>  Purcell later saw that same person stab Sanchez.  He identified [Dominguez] as that person from a photographic lineup.<sup>FN3</sup>  A fireman at a nearby station identified [Dominguez] as someone he had seen running away after the fight.  The description other witnesses gave of the stabber did not match [Dominguez].  The stabber was variously described as a "big dude" and a guy with long hair.  [Dominguez] was approximately 5'6" with a shaved head.

> FN2.  At the time of the fight and in court, Purcell wore red.  He denied any gang affiliation.

> FN3.  Several other witnesses also identified [Dominguez] as being involved in the fight.

In his interview with the police, [Dominguez] at first denied participating in the fight.  Eventually, he admitted he went to the fight.  He claimed he saw someone hitting his brother Leo, so he ran over and "socked the fool a couple of times."  [Dominguez] added he was scared off by a man with a machete.<sup>FN4</sup>

> FN4.  Both Renteria and Maharajh testified a man came over from the gas station with a machete.

2

A gang detective testified as an expert that [Dominguez], as well as his two brothers, had been validated as Sureño gang members. Sureños associate with the color blue and are enemies of Norteños, who associate with the color red. It was the expert's opinion that the stabbing would benefit the Sureño gang.

Over two months after the murder, the police stopped a car because it had a blue tree air freshener hanging from the rear view mirror.[FN5] The police saw [Dominguez], a passenger, reach under his seat. They then found a loaded .357 revolver there. At trial, the expert used this incident, as well as a similar incident in 2006 when [Dominguez] was in a car with a loaded gun, to validate [Dominguez] as a Sureño gang member. He testified guns are important to gangs and a gang member does not want to be caught "slippin'," that is, caught without his gun.

> FN5. "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle that obstructs or reduces the driver's clear view through the windshield or side windows." ([Cal.] Veh. Code, § 26708, subd. (a)(2).)

The defense offered an experimental psychology professor as an expert witness on memory and perception. He testified about general difficulties regarding accuracy of recall and memory.

During the discussion of instructions, the trial court indicated it would instruct on the natural and probable consequences doctrine, with battery or assault by force likely to cause great bodily injury as the target offenses. The defense made clear that it was not requesting an instruction on perfect or imperfect self-defense or defense of another for tactical reasons, as these defenses were at odds with the defense theory regarding defendant's lack of involvement in the murder. There was no discussion of possible defenses to the target offenses. The jury was instructed as to the murder on theories of both deliberation and premeditation and aiding and abetting battery or assault with murder as the natural and probable consequence.

In closing argument, the People offered both theories to the jury. The defense argued the prosecution offered the aiding and abetting theory because it could not prove [Dominguez] was the actual killer. The defense argued that all [Dominguez] did was go to the fight, see someone punch his brother, punch the man who punched his brother, and leave. "He's not aiding and abetting anybody else, he is punching a guy." The defense focused on the varying descriptions of the stabber.

The jury convicted [Dominguez] of first degree murder. The jury deadlocked, however, on the gang enhancement (Pen. Code, § 186.22, subd. (b)) and the enhancement for personal use of a knife (Pen.Code, § 12022, subd. (b)(1)). The trial court declared a mistrial on the enhancements and dismissed them in the interest of justice on the People's motion. The jury also convicted [Dominguez] of carrying a loaded firearm in a vehicle. (Pen.Code, § 12031, subd. (a).)

*People v. Dominguez*, No. C065762, 2012 WL 241146, at *1-3 (Cal. Ct. App. Jun. 27, 2012).

The trial court subsequently denied Dominguez probation and sentenced him to an imprisonment term of 25 years to life.

Through counsel, Dominguez appealed his conviction, arguing that: 1) the trial court's failure to *sua sponte* instruct the jury on the affirmative defense of defense of another warranted reversal of the conviction; 2) trial counsel was ineffective for failing to request a defense of another instruction; and 3) the trial court violated Dominguez's right to due process when it erroneously admitted evidence of an unrelated weapons possession charge. The Court of Appeal unanimously affirmed the conviction against Dominguez in a reasoned, unpublished opinion issued on June 27, 2012. *Dominguez*, 2012 WL 2411446, at *7. Dominguez sought rehearing of his claim that the trial court erred in failing to *sua sponte* instruct the jury on defense of another and additionally argued in his rehearing petition that appellate counsel was ineffective for failing to argue that the evidence was insufficient to support the murder conviction. The Court of Appeals summarily denied the rehearing petition. Counsel then petitioned in the California Supreme Court for review of his claims that the trial court should have instructed the jury on defense of another and that trial counsel was ineffective for failing to request it. The California Supreme Court denied the petition for review without comment on September 26, 2012.

Dominguez timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 3, 2013.

II. GROUNDS/CLAIMS

In his *pro se* Petition, Dominguez raises three grounds for relief. First, he argues that the trial court erred when it failed to *sua sponte* instruct the jury on defense of another. He similarly contends that he was denied the effective assistance of counsel due to trial counsel's failure to request a defense of another instruction. Finally, Dominguez asserts that the evidence was legally insufficient to support his murder conviction.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

5

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider

the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted his state court remedies, Dominguez must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

Respondent argues that Dominguez failed to exhaust his insufficiency of the evidence claim because he failed to raise that claim to the Court of Appeal on direct appeal and first raised it to that court only in his petition for rehearing.  In support, Respondent cites *Reynolds v. Bement*, 116 P.3d 1162, 1172 (Cal. 2005), *abrograted on other grounds by Martinez v. Combs*, 231 P.3d 259 (Cal. 2010), in which the California Supreme Court stated, "It is well settled that arguments, including insufficiency of the evidence, cannot be raised for the first time in a petition for rehearing."  It is not clear, however, that Dominguez failed to properly raise his claim to the Court of Appeal because he specifically argued in the rehearing petition that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim on direct appeal, which may have excused the failure to raise the claim in his initial brief.  But in any event, Dominguez did not raise his sufficiency of the evidence claim to the California Supreme Court in his petition for review and thus did not raise it before the state's highest court.  Consequently, Dominguez's insufficiency of the evidence claim is unexhausted for that reason and is denied on that basis.

B.      Merits

Even if Dominguez had exhausted his insufficiency of the evidence claim, he would not be entitled to relief on it.  For the reasons discussed below, Dominguez cannot prevail on the

merits of that claim either. And, as further discussed below, Dominguez's exhausted claims are also without merit.

      <u>Claims 1-2.</u>    *Instructional Error/Ineffective Assistance of Counsel*

Dominguez first argues that the trial court erred when it failed to *sua sponte* instruct the jury as to defense of another.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in

the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

On direct appeal of his conviction, the Court of Appeal rejected Dominguez's claim, concluding that an instruction on defense of another was not warranted under the facts of this case:

> [Dominguez's] statement to the police, particularly as argued to the jury, permitted the jury to find either of two levels of involvement by [Dominguez]. The first of these levels of involvement, or scenarios, was that [Dominguez] did not participate in the gang fight at all, but only hit someone to help his brother. The second scenario was that [Dominguez] hit someone to help his brother as part of his intentional participation in a gang fight. We consider whether it was error not to instruct on defense of another under either of these two scenarios.
> [Dominguez's] version of events, as argued by his counsel, does not support a finding that he aided or abetted the target offenses that resulted in murder. [Dominguez] told the police that he simply hit someone a few times—"socking the fool a couple of times"—to protect his brother. Trial counsel argued that [Dominguez] did only "one thing: He went there, he saw somebody punching one of the brothers, and he punched the guy, turned around and left." This argument was in line with the defense opening statement that [Dominguez] "wasn't going to a gang fight." Jurors who accepted this version of [Dominguez's] actions could not have found [Dominguez] guilty of murder on an aiding and abetting theory. To believe that [Dominguez] was not part of the fight, but acted only to rescue his brother who was under attack, required also finding that he did not share the intent of the others involved in the fight and was not aiding and abetting the fight, or consequently, the murder. As defense counsel argued, if [Dominguez] simply "punched somebody" and was "punching a guy" to help his brother, "[t]hat's not aiding and abetting." Counsel was correct.
> Any error in failing to instruct on defense of another was necessarily harmless if the jury believed [Dominguez's] version of events. Even if the jury had found [Dominguez] guilty of battery, the jury could not find him guilty of murder on a natural and probable consequences theory of aiding and abetting because his version did not allow a finding that he aided and abetted the group; in his version, [Dominguez] was not

9

part of, and did not intend to facilitate, the gang attack. Under the instructions given the jury, this limited role was insufficient to constitute aiding and abetting. We presume jurors understand and follow instructions. (*People v. Morales* (2001) 25 Cal.4th 34, 47.)

The second scenario is provided by [Dominguez's] grudging admission that the fight appeared to be a "gang thing." This admission permitted the jury to find he had greater involvement in the fight than merely "socking the fool" that was fighting with his brother. There was evidence that [Dominguez], as well as his brothers, was a Sureño gang member. Based on this evidence, the jury, or some jurors, could have accepted [Dominguez's] story that he went to the aid of his brother, but also believed that he was aware of the general fight and, as a Sureño gang member, he intended to aid that fight. Indeed, this was the position argued by the People. The prosecutor argued [Dominguez] was "on the hook" for murder if he got involved and threw a punch, if he intended to promote and encourage the fight. If so, [Dominguez] would have been aiding and abetting the target offense and faced conviction for murder. Under this scenario, however, defense of another would not have been available to him as a defense.

From the evidence adduced at trial, it is clear that as the fight progressed, the group that arrived in the Suburban moved considerably beyond acting to save Chavez, [Dominguez's] brother. In particular, long after Chavez was removed from the danger zone, the group that savagely beat Sanchez intended to assault, batter, and severely injure him.

The use of defense of another, like self-defense, "is limited to the use of such force as is reasonable under the circumstances. [Citation.]" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.) To assert defense of another, [Dominguez] could use only the force reasonably necessary to defend against the immediate danger to his brother. (CALCRIM No. 3470.) If jurors found [Dominguez] was either a member of the group beating the helpless Sanchez or that he was punching someone else to aid the group beating Sanchez with the intent of facilitating that beating, such use of force was excessive because it went beyond what was necessary to help his brother. Because [Dominguez] used excessive force, defense of another would not be an available defense.

To summarize: If [Dominguez] punched someone only to aid his brother, defense of another was available as a defense to assault or battery. [Dominguez], however, was not separately charged with assault and battery; he was charged with murder with assault and battery as possible target offenses. If [Dominguez] acted only to aid his brother, he was not aiding and abetting the fight that lead to murder and had no liability for murder. As there was no evidence to support defense of another in the context of the charged crime of murder, an instruction on defense of another as a defense to assault or battery alone was unnecessary. (*See People v. Salas* (2006) 37 Cal.4th 967, 982 [in determining whether the evidence is sufficient to warrant a jury instruction, the trial court considers only whether there was evidence sufficient to raise a reasonable doubt as to defendant's guilt].)

Alternatively, if [Dominguez] joined the fight not only to rescue his brother, but also to promote and encourage the general gang attack, his use of force—in facilitating the brutal assault on Sanchez—went beyond the force necessary to help his brother.

10

>Defense of another was not available as a defense to the target offenses that led to murder under the natural and probable consequences doctrine.
>   Thus, the trial court did not err in failing to instruct sua sponte on defense of another as a defense to the target offenses of assault or battery.

*Dominguez*, 2012 WL 2411446, at *4-5.

Dominguez cannot prevail on federal habeas review either. The Court of Appeal's opinion rejecting this claim was not objectively unreasonable, and Dominguez has failed to establish that the evidence presented at trial warranted a defense of another instruction or that any authority of the United States Supreme Court mandates such instruction under the circumstances presented in this case.

In California, a defendant may be found guilty under an aiding and abetting theory if the following elements are established beyond a reasonable doubt: (1) the defendant acted with knowledge of the unlawful purpose of the perpetrator; (2) the defendant acted with the intent or purpose of committing, encouraging, or facilitating the commission of the offense; and (3) the defendant, by act or advice, aided, promoted, encouraged or instigated, the commission of the crime. *See People v. Prettyman*, 926 P.2d 1013, 1018-19 (Cal. 1996). An aider and abettor is liable for not only the intended, or target, offense committed by a direct perpetrator, "but also of any other crime the direct perpetrator actually commits that is a natural and probable consequence of the target offense." *People v. Mendoza*, 959 P.2d 735, 740 (Cal. 1998) (citing *Prettyman*, 926 P.2d at 1015). The California Supreme Court has explained:

>[A]n aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also for any other offense that was a natural and probable consequence of the crime aided and abetted. Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that

11

murder, even if unintended, if it is a natural and probable consequence of the intended assault.

*People v. McCoy*, 24 P.3d 1210, 1213 (Cal. 2001) (internal quotation marks and citations omitted); *see also People v. Gonzales*, 104 Cal. Rptr. 2d 247, 256 (Cal. Ct. App. 2008) ("[T]he only requirement [to impose vicarious liability under aider and abettor jurisprudence in California] is that the aider and abettor intend to facilitate [a] target offense and that the offense ultimately committed is the natural and probable consequence of the target offense.").

As the Court of Appeal stated, if the jury found credible Dominguez's version of events that he was only briefly involved in the fight for the sole purpose of protecting his brother, the jury would not have concluded that he aided and abetted the fight itself. *Dominguez*, 2012 WL 2411446, at *4. A defense of another instruction was thus not warranted in that scenario.

In his Traverse, Dominguez challenges the Court of Appeal's alternate conclusion that, "[i]f jurors found [Dominguez] was either a member of the group beating the helpless Sanchez or that he was punching someone else to aid the group beating Sanchez with the intent of facilitating that beating, such use of force was excessive because it went beyond what was necessary to help his brother." Dominguez seems to argue that, if he used force beyond what was required to help his brother, he was necessarily the "stabber," a finding which the evidence at trial did not conclusively establish. But it is simply not true that stabbing is the only method of using excessive force. The Court accepts, as it "must," the California Supreme Court's "identification of the elements" of aiding and abetting liability under the "natural and probable consequences" doctrine. *Solis v. Garcia*, 219 F.3d 922, 927 (9th Cir. 2000). Again, California law mandates that, "if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable

12

consequence of the intended assault." *McCoy*, 24 P.3d at 1213. Thus, if Dominguez acted to promote or aid the fight, even if his actions were limited to physical blows and not the fatal stabbing, his actions in promoting the fight would constitute force beyond that necessary for the protection of his brother, and the defense of another instruction would not be available in that circumstance either. Consequently, Dominguez would be liable for any offenses that were a natural and probable consequence of that fight, including Sanchez's stabbing.

Furthermore, as the Court of Appeal correctly concluded, because there was no evidence to support a defense of another instruction in the context of murder, Dominguez cannot prevail on his related claim that counsel was ineffective for failing to request such instruction. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (counsel has no obligation to raise meritless arguments); *Madayag v. Evans*, 442 F. App'x 354, 355-56 (9th Cir. 2011)[2] (counsel not ineffective for failing to request jury instruction where there was no evidence to support it); *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (failure to raise a meritless argument does not constitute ineffective assistance). Dominguez is thus not entitled to relief on either of his first two claims.

   Claim 3.    *Insufficiency of the Evidence*

Dominguez further argues that the evidence was insufficient to support his conviction of first degree murder on a theory of aiding and abetting the target offenses of assault and battery.

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[2]    Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

   It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his argument, Dominguez contends:

> The jury's inability to unanimously agree on the 12022(b)(1) [weapons] enhancement shows that *some* members of the jury were not convinced beyond a reasonable doubt that petitioner stabbed Sanchez to death. The mistrial on the 186.22(b)(1) [gang] enhancement shows that not all juror were convinced that petitioner intended to *promote, further, or assist in any criminal conduct by gang members*.
> . . .
> Thus, it appears quite likely that the jury did not come to an unanimous agreement as to petitioner's criminal intent.

But under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup*, 513 U.S. at 330. The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Although it might have been possible to draw a different inference from the totality of the evidence, and even assuming that some jurors did not believe that Dominguez intended to aid the fight, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Here, a reasonable juror could have determined that Dominguez did not enter the fight simply to defend his brother but rather intended to aid the fight in general, based on

15

Dominguez's statements to the police and eyewitness testimony that Dominguez attacked the victim while he was in a fetal position. Viewing that evidence in the light most favorable to the verdict, the record does not compel the conclusion that no rational trier of fact could have found proof that Dominguez intended to aid the fight. Thus, considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA, this Court concludes that there was sufficient evidence introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that Dominguez was guilty of first degree murder on a theory of aiding and abetting the target offenses of assault and battery. Accordingly, Dominguez is not entitled to relief on his insufficiency of the evidence claim.

Construing Dominguez's *pro se* Petition liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Court may discern that it raises a claim challenging the verdict's verdict for lack of unanimity. But the Constitution does not require unanimous agreement on the theory underlying a conviction. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (federal jury need not unanimously decide which set of facts make up a particular element of a crime); *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality holding that conviction under different theories does not violate due process); *see also McKoy v. N. Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) ("[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (footnotes omitted)). While a California trial court may be required under state law mandating that a jury verdict in a criminal case be unanimous to *sua sponte* instruct the jury that it must unanimously agree on the acts or elements underlying the offense in order to convict, federal law

is clear that, at least in a non-capital case, there is no federal right to a unanimous jury verdict. *Compare People v. Diedrich*, 643 P.2d 971, 980-81 (Cal. 1982) and *People v. Crawford*, 182 Cal. Rptr. 536, 538 (Cal. Ct. App. 1982) (unanimity instruction required where defendant was charged with possession of one or more firearms by felon and jury could disagree as to particular firearm), *with Schad*, 501 U.S. at 634 n.5 ("a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict") and *Apodaca v. Oregon*, 406 U.S. 404, 410-13 (1972) (no constitutional right to unanimous jury verdict in non-capital criminal cases). Consequently, at least in non-capital criminal cases, courts within the Ninth Circuit have routinely dismissed habeas claims arguing that a California "unanimity" jury instruction was required. *See, e.g., Sullivan v. Borg*, 1 F.3d 926, 927-28 (9th Cir. 1993) (citing *Schad* to find that instruction allowing California jury to convict defendant of first degree murder without unanimity as to whether he had committed felony murder or premeditated murder did not violate petitioner's due process rights); *O'Rourke v. O'Connor*, No. CIV S-09-1837, 2010 WL 4880667, at *6 (E.D. Cal. Nov. 23, 2010). Accordingly, Dominguez cannot prevail on this claim in any event.

## V. CONCLUSION AND ORDER

Dominguez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 24, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge